IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | |
| KRYSTOF SONTAG | : | CHAPTER 13 |
| PATRICIA A. SONTAG | : | CASE NO. 1:23-bk-00465-HWV |
| Debtors | : | |

**BRIEF OF DEBTORS IN RESPONSE TO BRIEF OF WBL SPO II LLC
RELATING TO THE OBJECTION OF WBL SPO II LLC TO
CONFIRMATION OF DEBTORS' CHAPTER 13 PLAN**

**I.  PROCEDURAL HISTORY**

Debtors, Krzysztof C. Sontag and Patricia Sontag (hereinafter jointly "Debtors" or individually "Krzysztof" or "Patricia"), filed their above-captioned Chapter 13 Voluntary Petition on March 6, 2023. Debtors filed a Chapter 13 Plan on June 2, 2023. On July 11, 2023, WBL SPO II LLC (hereinafter "WBL") filed an objection to confirmation of the Debtors' Plan. Following an October 25, 2023 confirmation hearing, the Court entered an order (Doc 47) establishing a briefing schedule and setting oral argument for December 12, 2023. Pursuant to the briefing schedule, WBL filed its brief on November 9, 2023. Pursuant to the briefing schedule, Debtors now submit their brief, which is due on or before November 24, 2023.

**II.  STATEMENT OF FACTS**

On or about May 20, 2020, in an effort to keep his business afloat during the Pandemic, Krzysztof, doing business as Krzysztof's Barber Shop & Hair Salon, entered into a somewhat Faustian bargain, which ultimately jeopardized not only his business but also the residence of he and his wife, when he signed a Business Promissory Note and Security Agreement (hereinafter "Note") and related documents for a "business loan" from World Business Lenders, LLC. (See

Doc 53, Exhibits 1 through 4). The principal amount of the loan was $75,050.00. Id. The interest rate stated in the Note is 0.147945205479% per day, which equates to approximately 63% per annum. Id. The Note provided for 51 payments of $882.16 each "Business Week" commencing on May 21, 2021 and ending on May 12, 2022, followed by a final payment of $68,754.21 on May 19, 2022. Id. Krzysztof's business is located in Westminster, Maryland, as stated in the Note. Id. The Note was assigned to WBL per an Allonge thereto. Id.

On or about the same day, Debtors signed a Mortgage, Assignment of Leases and Rents and Security Agreement (hereinafter "Mortgage"). (See Doc 53, Exhibit 5). The Mortgage is secured, *inter alia*, by the debtors' residence located in Hanover, Pennsylvania. Id.

Following default on the Note by the Borrower, on March 24, 2020, WBL filed a complaint in mortgage foreclosure in York County, Pennsylvania. A Praecipe for Judgment was filed on May 3, 2022 in the amount of $126,210.32. By the time the Praecipe for Writ of Execution was filed on November 16, 2022, the total amount had risen to $166,404.80. WBL filed a Proof of Claim on April 17, 2023, designated Claim 16, stating a secured claim amount of $170,283.45. WBL filed an amended Proof of Claim on October 24, 2023 in the amount of $170,178.45. Both the original and amended Claims state an interest rate of 63%.

### III. STATEMENT OF QUESTIONS INVOLVED

A. Is the law of Maryland or Pennsylvania applicable?

    B. What is the applicable interest rate:
          1. Post-judgment through maturity;
          2. Post–maturity through the petition date;
          3. Post–petition through confirmation; and
          4. Post–confirmation?

    C. Is the 63% interest rate usurious or illegal in any respect?

## IV. ARGUMENT

### A. Choice of Law

Section 16 (c) of the Note states "[t]his Loan Agreement shall be governed by the laws of the State (or Commonwealth, as the case may be) of Borrower's address set forth in Section 1 ("Borrower's State")." (Doc 53, Exhibit 1). As previously indicated, the Borrower's address is identified as Westminster, Maryland. The Mortgage, on the other hand, in paragraph 33 dealing with governing law and venue, states:

> (a) WITH RESPECT TO MATTERS RELATING TO THE CREATION AND PERFECTION OF THE LIENS AND SECURITY INTERESTS CREATED BY THIS MORTGAGE, AND TO PROCEDURES RELATING TO THE FORECLOSURE OF SUCH LIENS AND SECURITY INTERESTS, THIS MORTGAGE SHALL BE GOVERNED BY, AND BE CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE PROPERTY STATE, IT BEING UNDERSTOOD THAT, EXCEPT AS EXPRESSLY SET FORTH ABOVE IN THIS PARAGRAPH AND TO THE FULLEST EXTENT PERMITTED BY THE LAW OF THE PROPERTY STATE, THE LAW OF THE LOAN AGREEMENT STATE APPLICABLE TO CONTRACTS MADE AND PERFORMED IN SUCH STATE, SHALL GOVERN ALL OTHER MATTERS RELATING TO THIS MORTGAGE AND THE OTHER LOAN DOCUMENTS, INCLUDING ALL MATTERS RELATING TO THE DEBT (INCLUDING THE ENFORCEMENT THEREOF) ARISING HEREUNDER OR THEREUNDER.

(Doc 53, Exhibit 5) (uppercase in the original). In paragraph 44 of the Mortgage "Property State" is defined as "the state where the Mortgaged Property is located." (Doc 53, Exhibit 5).

Where the parties' agreement contains a choice-of-law provision, "there must be a choice-of-law analysis to determine the validity of the parties' choice-of-law provision." *Erie Materials, Inc. v. Dombroski (In re Dombroski)*, 478 B.R. 198, 202 (Bankr. M.D. Pa. 2012). A federal court is "required to apply the choice-of-law rules of the 'state in which it sits.'" Id. at 203 (quoting *Buffalo Molded Plastics, Inc. v. Plastic Mold Technology, Inc. (In re Buffalo Molded Plastics, Inc.)*, 354 B.R. 731, 750 (Bankr. W.D. Pa. 2006)). Hence, the Pennsylvania choice-of-law standard applies, which "is a hybrid of two tests: the 'most significant relationship' approach of the Restatement (Second) of Conflicts of Law and a governmental interest approach." *Dombroski* at 203 (citations omitted). In *Dombroski*, Judge Opel described the Pennsylvania process as follows:

> the Pennsylvania approach is a two-step analysis. First, the court must determine whether there is a true conflict of laws or merely the existence of a "false conflict." *In re Buffalo*, 354 B.R. at 750. If a true conflict exists, the reviewing court then determines which state has the greatest interest in the application of its law through use of the "most significant relationship" test of the Restatement (Second) of Conflict of Law. *Huber v. Taylor*, 469 F.3d 67, 73-75 (3d Cir. 2006); *LeJeune v. Bliss-Salem, Inc.*, 85 F.3d 1069, 1071 (3d Cir. 1996). To resolve whether a true conflict exists, courts compare the competing state laws and the governmental interests they represent. *In re Buffalo*, 354 B.R. at 750.

*Dombroski* at 203.

In light of the foregoing, the competing state laws will be addressed in the following sections of this Brief.

### B. Applicable Interest Rates

#### 1. Post-Judgment, Pre-Maturity

Generally, in Pennsylvania the 6% legal rate of interest, found in 41 P.S. §202, applies post–judgment. "[B]ankruptcy courts have consistently held that the doctrine of merger under Pennsylvania law entitles a mortgagee post-judgment to the legal rate of interest rather than the rate specified in the mortgage." *In re Stendardo,* 991 F.3d 1089, 1095 (3d Cir. 1992). However, there is an exception to the merger doctrine. "Parties to a mortgage may rely upon a particular provision post-judgment if the mortgage clearly evidences their intent to preserve the effectiveness of that provision post-judgment." Id. See also *In re Presque Isle Apartments*, 112 B.R. 744, 747 (Bankr. W.D. Pa. 1990). The Note, at Section 13, provides that "[i]n the event this Loan Agreement is brought to a judgment, interest shall accrue at the interest rate set forth in Section 2 above until the judgment is satisfied, except as prohibited by applicable law." (Doc 53, Exhibit 1). Assuming the foregoing language is sufficiently clear evidence of the intent to continue the contract rate post-judgment, the contract rate would apply post-judgment unless and until it is superseded by other Pennsylvania or Bankruptcy law.

The opinions cited by WBL in its brief deal generally with contract interpretation in Maryland. However, those opinions do not address post-judgment interest. Article III, Section 57 of the Constitution of Maryland provides that "[t]he Legal Rate of Interest shall be Six per cent per annum, unless otherwise provided by the General Assembly." Constitution of Maryland, Article III, §57. Section 11-107 of the Maryland Code, Courts and Judicial Proceedings, dealing with the rate of interest on judgments, provides that "(a) Except as provided in §11-106 of this subtitle, the legal rate of interest on a judgment shall be at the rate of 10 per cent per annum on the amount of judgment." MD Code, Courts and Judicial Proceedings, §11-107. Section 11-106 provides that:

> (a) A money judgment entered in an action arising from a contract for the loan of money shal [sic] carry interest at the rate charged in the contract on any balance remaining unpaid until the date of maturity of the contract as originally scheduled. However, the rate of interest shall be on the unpaid principal of the money borrowed. *The provisions of this section do not apply to any loan secured by a mortgage or deed of trust.*

MD Code, Courts and Judicial Proceedings, §11-106 (emphasis added). A search of Maryland case law revealed no exception in Maryland comparable to that provided by *Stendardo* and *Presque Isle* in Pennsylvania. Similarly, there appear to be no other Maryland statutes specifically dealing with post-judgment interest relating to a loan secured by a mortgage. Therefore, it appears that the applicable post-judgment rate in Maryland on a loan secured by a mortgage is 10 per cent.

2. **Post-Maturity, Pre-Petition**

Both Pennsylvania and Maryland have long-standing case law essentially stating that, absent specific language to the contrary, the legal rate of interest applies post-maturity. In Pennsylvania it is simply stated "that it is but proper to say that where the interest on a promissory note is fixed at less than six per cent, such rate applies up to maturity of the notes, and the words ,until paid, relate to such maturity, and thereafter the legal rate of six per cent will prevail." *Wright v. Hanna,* 210 Pa. 349, 354-55, 59 A. 1097, 1098 (Pa. 1904). See also *In re Dilts*, 143 B.R. 644 (Bankr. W.D. Pa. 1992); *In re Smith*, 463 B.R. 756 (Bankr. E.D. Pa. 2012).

In Maryland, the Court of Appeals stated "[u]pon this question there is some conflict of authority, but the weight of best authorities is, we think, decidedly in favor of making interest on overdue instruments to run at the legal rate, after due and unpaid." *Brown v. Hardcastle*, 63 Md.

484 (Md. 1885). "The agreement is not to pay one per cent. interest until paid, but to pay the sum named by a particular day, with one per cent. interest added." Id. See also *Paape v. Grimes*, 256 Md. 490, 260 A.2d 644 (Md. 1970); *Collins v. Morris*, 122 Md.App. 764, 716 A.2d 384 (Md.App. 1997). Section 11-106 appears to recognize the significance of maturity. That section permits contract interest for the types of contracts subject thereto up "until the date of maturity of the contract as originally scheduled." MD Code, Courts and Judicial Proceedings, §11-106. Because §§11-106 and 11-107 deal with post-judgment interest, it appears that the legal rate of 6% stated in the Maryland Constitution should apply post-maturity.

In Pennsylvania, "[t]he parties can by mutual consent agree to other terms for the rate of interest after maturity but such language must clearly appear in the instrument itself." *Dilts* at 646. Unlike judgment, it does not appear that the Note specifically provides for interest to accrue at the contract rate following maturity and WBL has pointed to no such language. Therefore, it appears that following maturity, the appropriate rate in both Pennsylvania and Maryland is the legal rate of 6 per cent.

The case at issue is factually similar to the *Smith* case. In *Smith* the mortgagee obtained summary judgment eight days prior to maturity of the Note therein. Similarly, WBL obtained a default judgment 16 days prior to maturity of the Note. In *Smith* the parties entered into a Consent Agreement that reinstated the contract rate post-judgment. In the case at issue, the Note contains the aforementioned language that appears to extend the contract rate post–judgment. Despite the Consent Agreement, the *Smith* Court, nevertheless, applied the Pennsylvania legal rate of interest following maturity because the Consent Agreement only addressed the interest rate post-judgment and not post-maturity.

In *Dilts*, the mortgagee had not taken a pre-petition judgment on the Note. However, the Note matured on February 1, 1986, prior to the bankruptcy filing on September 2, 1987. Because the Note in *Dilts* contained no express language providing for continuation of the contract rate of interest after maturity, the Court found the 6% legal rate of interest applicable post-maturity. Because the Note and related documents herein appear to be silent as to post-maturity interest, the legal rate of interest should, likewise, be applied in this case as it was in *Smith* and *Dilts*.

### 3. Post-Petition, Pre-Confirmation

Generally, a creditor is not entitled to interest accruing post-petition. *First United Sec. Bank v. Garner (In re Garner)*, 663 F.3d 1218, 1219 (11th Cir. 2011). Section 506 (b), however, provides that "[t]o the extent that an allowed secured claim is secured by property the value of which ... is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim... provided for under the agreement or State statute under which such claim arose." 11 U.S.C. §506 (b). "In determining the amount of post-petition interest allowable under §506 (b), most courts employ the rate of interest applicable under the parties' contract." *Smith* at 765. Nevertheless, in *Smith*, the court found that "in this case, involving a matured loan note, the proper interest rate is 6%." Id. The same result was reached in *Dilts* where the Note was silent as to the interest rate post-maturity. The mortgagee was entitled to its contract rate of interest from inception of the loan through maturity and the legal rate of interest of 6% after maturity up until the effective date of the Plan. See *Dilts* at 647.

The debtor's residence is valued at $455,750.00. (See Doc 25, Page 3; Doc 26). In addition to the claim of WBL, in the amount of $170,178.45, there is a first mortgage in the amount of $125,629.74. (Claim 21-1). Therefore, it appears that WBL is oversecured and entitled to §506 (b) interest. As in *Smith* and *Dilts*, the amount of §506 (b) interest should be the legal rate of interest because the Note has matured. Whether Pennsylvania or Maryland law applies, the legal rate is 6%.

### 4. Post-Confirmation

Regardless of whether Pennsylvania or Maryland law applies, the proper post-confirmation interest rate is the *Till* rate. *Till v. SCS Credit Corp.*, 541 U.S. 465, 124 S.Ct. 1951, 158 L.Ed.2d 787 (2004). At the time of filing, the prime rate was 8.75%. As of November 21, 2023, the prime rate is 8.50%. Typically, in the Middle District the *Till* rate is the prime rate plus 1%.

The anti-modification provision of Bankruptcy Code §1322 (b) (2) prohibits a debtor from modifying a claim secured only by the debtor's principal residence. 11 U.S.C. §1322 (b) (2). However, §1322 (c) (2) provides an exception to the anti-modification provision if the last payment under the loan agreement is due before the final payment under the plan. 11 U.S.C. §1322 (c) (2). In such circumstances, the debtor is permitted to modify the claim pursuant to §1325 (a) (5) of the Code. Id. When a claim is modified pursuant to §§1322 (c) (2) and 1325 (a) (5), the *Till* rate applies post-confirmation. *In re Golash*, 428 B.R. 189 (Bankr. W.D. Pa. 2010); see also *In re Licina*, Case No. 12-23003/JHW (Bankr. N.J. October 22, 2012) (*Till* rate applies

post-confirmation to claims arising from foreclosure judgments modified pursuant to §§1322 (b) (2) and 1325 (a) (5); *In re Narcise*, No. 8:21-bk-03580-RCT (Bankr. M.D. Fla. August 30, 2022) (*Till* rate applies post-confirmation to claims arising from foreclosure judgments modified pursuant to §§1322 (c) (2) and 1325 (a) (5)).

The WBL mortgage appears to be secured by property other than the Debtors' principal residence. (See Doc 53, Exhibit 5, Page 2 (d) and (f)). Nevertheless, the Note matured pre-petition. Therefore, the claim of WBL may be modified pursuant to either §1322 (b) (2) or §1322 (c) (2) and §1325 (a) (5). As such, the *Till* rate should apply post-confirmation.

C. **Legality of the Interest Rate in the WBL Note**

In *First National Bank of Pennsylvania v. Flanagan*, 528 A.2d 134, 515 Pa. 263 (Pa. 1987), the Pennsylvania Supreme Court appeared to indicate that the Pennsylvania Loan Law found at 41 P.S. §101 *et seq.* "includes business loans which are actually or potentially secured by residential real estate." *Flanagan* at 137. However, the statement has not been followed by federal courts, which consider it wholly "dictum." *See Gatti v. National Bank of the Commonwealth*, 696 F.Supp. 153, 155 (E.D. Pa. 1988); *In re Saler*, 84 B.R. 45, 47 n. 2 (Bankr. E.D. Pa. 1988); *In re DiPietro*, 135 B.R. 773, 778 (Bankr. E.D. Pa. 1992). The real issue in *Flanagan* dealt with the constitutionality of a legislative attempt to give an amendment to a statute retroactive effect. It has long been held that the interest rate limitations in the Loan Law do not apply to business loans. *See In re Jungkurth*, 74 B.R. 323, 329-331 (Bankr. E.D. Pa. 1987, *aff'd* 87 B.R. 333 (E.D. Pa. 1988) (interest rate of over 50% not subject to a challenge that the loan was usurious in a "business loan").

Any provisions in the Truth in Lending Act (TILA) regarding limitations on interest rates appear to be inapplicable. The TILA does not apply to "credit transactions involving extensions of credit primarily for business, commercial, or agricultural purposes." 15 U.S.C. §1603 (1). TILA's scope is limited to "consumer" credit transactions in which "the money, property, or services which are the subject of the transaction are primarily for personal, family, or household purposes." 15 U.S.C. §1602 (h). "In determining whether a transaction is primarily consumer or commercial in nature for purposes of TILA exemption, the court must examine the transaction as a whole and the purpose for which the credit was extended." *Gombosi v. Carteret Mortgage Corp.*, 894 F.Supp. 176, 180 (E.D. Pa. 1995). "Where credit is extended for both personal and business reasons, the mere fact that the transaction has *some* personal purpose does not automatically render it subject to the provisions of TILA." Id. "The plaintiff bears the burden of showing that a disputed transaction is a consumer credit transaction, not a business transaction." Id. See also *In re DiPietro*, 135 B.R. 773 (Bankr. E.D. Pa. 1992) (TILA does not apply to loan to finance the establishment of a tailor shop).

As egregious, unconscionable and outrageous as the interest rates charged by WBL may seem to be, there is apparently no legal basis to challenge them. While such rates will undoubtedly cause the borrowers many sleepless nights, or perhaps even conjure up Godfather-esque nightmares, it appears that such rates are, nevertheless, perfectly legal.

V. **CONCLUSION**

During the brief time period following entry of judgment in the mortgage foreclosure action until maturity of the Note, it appears that the contract rate of interest would apply if

subject to Pennsylvania law per *Stendardo* and a 10% interest rate would apply if subject to Maryland law per MD Code, Courts and Judicial Proceedings, §11-107. Of course the Debtors would prefer the 10% Maryland rate rather than the 63% contract rate even though there was no challenge to the calculation in the Praecipe for Writ of Execution and, at this time, there has been no objection to the WBL proof of claim..

Following maturity of the Note through the petition date, the rate of interest should be 6% regardless of whether Maryland or Pennsylvania law is applicable. The 6% rate in the Maryland Constitution would be applicable under Maryland law and the 6% legal rate would be applicable under Pennsylvania law.

Because WBL is over secured, §506 (b) interest is appropriate from the petition date up until the effective date of the plan. Again, the §506 (b) rate should be 6% rather than the contract rate because the Note matured pre-petition. Pursuant to the state law under which the claim arose, the interest rate would be 6% whether Pennsylvania or Maryland law applies.

Following confirmation, the applicable interest rate is the *Till* rate because the claim of WBL is properly modified pursuant to either §1322 (b) (2) or §1322 (c) (2) and §1325 (a) (5).

[Remainder of page intentionally left blank]

Respectfully submitted,

IMBLUM LAW OFFICES, P.C.

DATED: 11/22/23

*Jeffrey L. Troutman*
Jeffrey L. Troutman, Esquire
Attorney I.D. No. 53984
4615 Derry Street
Harrisburg, PA 17111
(717) 238-5250
Fax No. (717) 558-8990
gary.imblum@imblumlaw.com
Attorneys for Defendant

## CERTIFICATE OF SERVICE

I, Jeffrey L. Troutman, Esquire, hereby certify that I have served a copy of the foregoing **BRIEF OF DEBTORS IN RESPONSE TO BRIEF OF WBL SPO II LLC RELATING TO THE OBJECTION OF WBL SPO II LLC TO CONFIRMATION OF DEBTORS' CHAPTER 13 PLAN** on the following person(s) by E-Service to:

Chapter 13 Trustee
Via E-Service

Jessica M. Gulash, Esquire
Lundy, Beldecos & Milby, P.C.
Via E-Service

                                              IMBLUM LAW OFFICES, P.C.

                                              *Jeffrey L. Troutman*
                                              Jeffrey L. Troutman, Esquire
                                              4615 Derry Street
                                              Harrisburg PA 17111
                                              717 238-5250
                                              Fax No. 717-558-8990
                                              Email: Jeff.Troutman@imblumlaw.com

Dated: 11/22/23